UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mary McMenamy, individually and on behalf of all others similarly situated, | |
| Plaintiff, | 5:22-cv-01053 (TJM/ATB) |
| - against - | Class Action Complaint |
| Nestlé USA, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Nestlé USA, Inc. ("Defendant") manufactures, markets, and sells flavored drink mixes represented as "A Good Source of 12 Vitamins & Minerals†" and having "No Artificials ‡" under the Ovaltine brand ("Product").



2. Consumers seek foods which taste good and provide for their nutritional needs.

3. The Food and Drug Administration ("FDA") was aware that statements about a food's nutrition were important to consumers, and established requirements so this information was not conveyed in a way that could be misleading.

4. Identical federal and state regulations consider a representation that the Product is a "A Good Source of 12 Vitamins & Minerals†" to be a nutrient content claim. 21 C.F.R. § 101.54(c).

5. This means the Product should provide between 10 and 19 percent of the recommended daily intake (RDI) or daily recommended value (DRV) of no less than 12 vitamins and minerals.

6. However, the Product is not a "good source" of 12 vitamins and minerals, because this requires the purchaser to "Mix[es] [it] with 1 cup low fat vitamin A & D milk," indicated in the third column on the Nutrition Facts.



7.      The highlighted green columns correspond to the second column on the Nutrition Facts, and reveal the Product is only a "good source" for nine vitamins and minerals, including iron, vitamin a, vitamin e, thiamin, niacin, vitamin b-6, biotin, zinc and copper.

| Vitamin/Mineral | Amount | RDI Per Serving | Nutrition Facts |
|---|---|---|---|
| Vitamin D | 11 mcg | 4% | |
| Calcium | 110 mg | 8% | |
| Iron | 2.6 mg | 10% | |
| Potassium | 80 mg | 0% | |
| Vitamin A | 180 mcg | 20% | |
| Vitamin C | 7 mg | 6% | |
| Vitamin E | 2.4 mg | 15% | |
| Thiamin | 0.2 mg | 15% | |
| Riboflavin | 0 mg | 0% | |
| Niacin | 2.4 mg | 15% | |
| Vitamin B-6 | 0.7 mg | 40% | |
| Vitamin B-12 | 0 mcg | 0% | |
| Biotin | 36 mcg | 120% | |
| Magnesium | 35 mg | 8% | |
| Zinc | 1.9 mg | 15% | |
| Copper | 0.2 mg | 20% | |

8.      That the Product is not a good source of 12 vitamins and minerals without adding other ingredients is discreetly indicated by the dagger accompanying the front label statement of "A Good Source of 12 Vitamins & Minerals,[†]" which corresponds to a smaller statement several lines below, "[†] When Prepared As Directed."



9. Even if purchasers see this smaller print, the directions and ingredients are only listed on the back of the container, and are inconsistent and unclear.

10. Though the third column of the Nutrition Facts instructs consumers to add "low fat vitamin A & D milk," an adjacent box references "one cup fat free milk," while a third location indicates a "Thoughtful Portion" includes "1 cup (8 oz) of milk," presumably whole milk.

 

11. The front label statement of "No Artificials ‡" appeals to the increasing percentage of consumers who seek foods without synthetic and artificial ingredients.

12. Artificial ingredients are those which are made through non-natural processes and/or from non-natural sources.

13. However, the double dagger symbol corresponds to a smaller statement several lines below which says, "No Artificial Flavors or Sweeteners."



4

14. Consumers seeing the bigger font of "No Artificials ‡" will expect this means the Product does not contain artificial ingredients.

15. However, the Product contains artificial and bioengineered ingredients, disclosed several lines beneath the ingredient list.

**INGREDIENTS:** SUGAR, MALT EXTRACT (MALTED BARLEY, BARLEY, CARAMEL COLOR, SOY LECITHIN), COCOA PROCESSED WITH ALKALI, WHEY, BEET JUICE COLOR, SALT, SOY LECITHIN, NATURAL FLAVOR, MOLASSES, CARAMEL COLOR.

**VITAMINS AND MINERALS:** CALCIUM CARBONATE, MAGNESIUM HYDROXIDE, VITAMIN C (SODIUM ASCORBATE), FERRIC ORTHOPHOSPHATE (IRON), ZINC SULFATE, VITAMIN E ACETATE, NIACINAMIDE, COPPER GLUCONATE, VITAMIN A PALMITATE, VITAMIN B6 (PYRIDOXINE HYDROCHLORIDE), VITAMIN B1 (THIAMINE HYDROCHLORIDE), BIOTIN, VITAMIN D3.

==CONTAINS A BIOENGINEERED FOOD INGREDIENT==

16. "Bioengineered" is another way to describe a genetically modified organism ("GMO"), which refers to a plant that has had its genetic material or DNA changed in a laboratory.

17. The probable bioengineered ingredient is soy lecithin, because like most soybean products, it is derived from genetically modified soybean plants.

18. While lecithin may be naturally occurring in soybeans, it is extracted using non-natural processes and with artificial, chemical solvents.

19. Consumers consider bioengineered or GMO ingredients, and those produced with the use of chemical compounds, to be artificial, because they are modified in a laboratory by scientists and use substances not found in nature.

5

20. Consumers seeing the prominent representation disclaiming "artificials," even if they see the smaller disclaimer, will not expect the Product to contain bioengineered or GMO ingredients, and ingredients produced with chemical compounds.

21. The Product contains other representations and omissions which are false and misleading.

22. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

23. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $5.49 for one 12 oz container, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

24. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

25. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

26. Plaintiff is a citizen of East Syracuse, New York, Onondaga County.

27. Defendant is a Delaware corporation with a principal place of business in Arlington, Virginia, Arlington County.

28. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

29. The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Product is sold at thousands of locations, including grocery stores, convenience stores,

dollar stores, drug stores, big box stores, and/or online, in the States of the proposed classes.

30. Venue is in this District because Plaintiff resides in Onondaga County, and the representations, omissions, reliance on them and awareness they were misleading occurred here.

## Parties

31. Plaintiff Mary McMenamy is a citizen of East Syracuse, New York, Onondaga County.

32. Defendant Nestlé USA, Inc. is a Delaware corporation with a principal place of business in Arlington, Virginia, Arlington County.

33. Defendant is a leading seller of foods providing necessary nutrition.

34. Ovaltine was developed over one hundred years ago in Europe to meet the nutritional deficits of the increasingly urban populations.

35. Ovaltine continues to be promoted to consumers as an efficient way to get nutrients, vitamins and minerals.

36. Plaintiff is one of the many consumers who seek to consume foods that contain significant amounts of vitamins and minerals and tries to avoid artificial ingredients.

37. Plaintiff relied on the prominent front label statement the Product was a "good source" of 12 vitamins and minerals and expected it contained such amounts of these vitamins and minerals as sold, and did not contain artificial ingredients.

38. Plaintiff read that the Product was a "mix," but believed the representations about the number and amount of the 12 vitamins and minerals applied to the contents as sold to her.

39. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied

the Product and separately, through in-store, digital, audio, and print marketing.

40. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Wegmans, 4256 James St, East Syracuse, NY 13057, between July and August 2022, and/or among other times.

41. Plaintiff bought the Product at or exceeding the above-referenced price.

42. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

43. Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or paid less.

## Class Allegations

44. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Wyoming, Montana, Alaska, Texas, Arizona, New Mexico, Mississippi, Utah, Nebraska, North Carolina, Tennessee, and West Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

45. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

46. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

47. Plaintiff is an adequate representative because her interests do not conflict with other

members.

48. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

49. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

50. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Plaintiff relied on the representations and omissions to believe the Product contained "good source" or significant levels of 12 vitamins and minerals without added ingredients, and did not contain artificial ingredients.

53. Plaintiff was damaged by paying more for the Product than she would have if she knew the present facts.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

54. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

55. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

56. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained "good source" or significant levels of 12 vitamins and minerals without added ingredients and did not contain artificial ingredients.

57. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

58. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods which contained "good source" or significant levels of 12 vitamins and minerals without added ingredients, and did not contain artificial ingredients, and developed its marketing and labeling to directly meet those needs and desires.

59. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant it contained "good source" or significant levels of 12 vitamins and minerals without added ingredients and did not contain artificial ingredients.

60. Defendant described the Product so Plaintiff believed it contained "good source" or significant levels of 12 vitamins and minerals without added ingredients, and did not contain artificial ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

61. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

62. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Ovaltine brand.

63. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

64. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

65. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

66. The Product did not conform to its affirmations of fact and promises.

67. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained "good source" or significant levels of 12 vitamins and minerals without added ingredients and did not contain artificial ingredients.

68. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained "good source" or significant levels of 12 vitamins and minerals without added ingredients, and did not contain artificial ingredients, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

69. Defendant had a duty to truthfully represent the Product, which it breached.

70. This duty is based on its position, holding itself out as having special knowledge and experience in this area, custodian of the Ovaltine brand, a trusted purveyor of nutritional foods.

71. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

72.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

73.     Defendant misrepresented and omitted that the Product contained "good source" or significant levels of 12 vitamins and minerals without added ingredients and did not contain artificial ingredients.

74.     Defendant was aware of consumer preferences for foods containing "good source" or significant levels of vitamins and minerals, and without artificial ingredients, and that consumers prefer foods with more vitamins and minerals compared to those with less.

### Unjust Enrichment

75.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory, and/or punitive damages pursuant to law;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   October 11, 2022

Respectfully submitted,

13

    /s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Law Office of James Chung
James Chung
43-22 216th St
Bayside NY 11361
(718) 461-8808
jchung_77@msn.com